UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

PEDRO JUAN RIVERA,

    Plaintiff,

        v.                                     No. 3:19-cv-00109(WIG)

ANDREW M. SAUL,
Commissioner of
Social Security[1],

    Defendant.

_____X

**<u>RULING ON PENDING MOTIONS</u>**

This is an administrative appeal following the denial of the plaintiff, Pedro Juan Rivera's, application for Title II disability insurance benefits ("DIB") and Supplemental Social Security Income ("SSI). It is brought pursuant to 42 U.S.C. §405(g).[2] Plaintiff now moves for an order

---

[1]     The President nominated Andrew M. Saul to be Commissioner of Social Security; the Senate Confirmed his appointment on June 4, 2019, vote number 133. He is substituted pursuant to Fed. R. Civ. P. 25(d). The Clerk is directed to amend the caption to comply with this substitution.

[2]     Under the Social Security Act, the "Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]." 42 U.S.C. §§ 405(b)(1) and 1383(c)(1)(A). The Commissioner's authority to make such findings and decisions is delegated to administrative law judges ("ALJs"). *See* 20 C.F.R. §§ 404.929; 416.1429. Claimants can in turn appeal an ALJ's decision to the Social Security Appeals Council. *See* 20 C.F.R. §§ 404.967; 416.1467. If the appeals council declines review or affirms the ALJ opinion, the claimant may appeal to the United States district court. Section 205(g) of the Social Security Act provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C § 405(g).

reversing the decision of the Commissioner of the Social Security Administration ("the Commissioner"), or in the alternative, an order remanding his case for a rehearing. [Doc. #13]. The Commissioner, in turn, has moved for an order affirming his decision. [Doc. # 15]. After careful consideration of the arguments raised by both parties, and thorough review of the administrative record, the Court grants Plaintiff's motion and remands the case for further proceedings.

## **LEGAL STANDARD**

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant will meet this definition if his or her impairments are of such severity that the claimant cannot perform pervious work and also cannot, considering the claimant's age, education, and work experience, "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner must follow a sequential evaluation process for assessing disability claims. The five steps of this process are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment which "meets or equals" an impairment listed in Appendix 1 of the regulations (the Listings). If so, and it meets the durational requirements, the Commissioner will consider the

claimant disabled, without considering vocational factors such as age, education, and work experience; (4) if not, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work in the national economy which the claimant can perform. *See* 20 C.F.R. §§ 404.1520; 416.920. The claimant bears the burden of proof on the first four steps, while the Commissioner bears the burden of proof on the final step. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the district court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. *Id.*; *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to first ascertain whether the Commissioner applied the correct legal principles in reaching his conclusion, and then whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). Therefore, absent legal error, a decision of the Commissioner cannot be set aside if it is supported by substantial evidence. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla or touch of proof here and there in the record." *Id.* If the

Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982).

I. **BACKGROUND**

   a. **Facts**

   Plaintiff filed his DIB application on January 26, 2017, and SSI application on April 20, 2017, alleging an onset of disability as of August 18, 2016. His claim was denied at both the initial and reconsideration levels. Thereafter, Plaintiff requested a hearing. On February 28, 2018, a hearing was held before Administrative Law Judge John T. Molleur ("the ALJ"). Plaintiff, who was represented by counsel, Maria Velasquez, Plaintiff's mother, and a vocational expert ("VE") testified at the hearing. On March 20, 2018, the ALJ issued a decision denying Plaintiff's claims. Plaintiff timely requested review of the ALJ's decision by the Appeals Council. On December 11, 2018, the Appeals Council denied review, making the ALJ's decision the final determination of the Commissioner. This action followed.

   Plaintiff was thirty-one years old on the alleged onset of disability date. (R. 93). He attended high school through the tenth grade and can communicate in English. (R. 95). Plaintiff has past employment as a tow truck driver, deliverer, cook, and laborer-construction. (R. 29-30). Plaintiff's complete medical history is set forth in the Statement of Facts filed by the parties. [Doc. ##13-1; 15-1]. The Court adopts these statements and incorporates them by reference herein.

   b. **The ALJ's Decision**

   The ALJ followed the sequential evaluation process to determine whether Plaintiff was disabled under the Social Security Act.

4

At Step One, the ALJ found Plaintiff has not engaged in substantial gainful activity since August 18, 2016. (R. 22). At Step Two, the ALJ found Plaintiff has the following severe impairments: schizophrenia/substance induced psychotic disorder and polysubstance abuse disorder. (R. 22). At Step Three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. 22-24). Next, the ALJ determined Plaintiff retains the following residual functional capacity[3]:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant should avoid tandem work or other team-oriented work; and there should be no requirement to interact with the general public. Additionally, the claimant should avoid fast-paced production work; and there should be no more than occasional decision-making or changes in the work setting.

(R. 24).

At Step Four, the ALJ relied on the testimony of the VE to conclude that Plaintiff was capable of performing past relevant work. (R. 29). Specifically, the VE testified that a person with Plaintiff's vocational factors and the assessed RFC can perform past relevant work as a Laborer-Construction, as actually performed by the claimant and as generally performed in the regional and national economy. (R. 29-30). The ALJ did not proceed to Step Five. Accordingly, the ALJ determined Plaintiff was not disabled from January 26, 2017, through the date of his decision, March 20, 2018. (R.30).

## II. DISCUSSION

Plaintiff raises several arguments in support of his Motion to Reverse, which the Court will address in turn.

---

[3] Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite his or her limitations. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

a. **Development of the Record**

Plaintiff argues that the ALJ's ruling should be reversed or remanded for a number of reasons relating to a failure to develop the record and obtain medical source statements from *any* of Plaintiff treating physicians and clinicians including mental health providers APRN Mazine Coore, Jose Bejarano, M.D., Jaritza Melendez, Psy.D, and Jomary Sepulveda-Betancourt Psy.D. [Doc. #13-2 at 1-7]. For the reasons that follow, the Court finds that the ALJ did not fulfill his duty to develop the record and that remand is warranted to obtain treatment records and a medical source statements from treating physicians and clinicians.

"It is the rule in our circuit that the ALJ, unlike the judge in a trial, must [him]self affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1997) (internal quotation marks omitted); *see Moreau v. Berryhill*, No. 3:17-CV-396 (JCH), 2018 WL 1316197, at *4 (D. Conn. Mar. 14, 2018) ("An ALJ in a social security benefits hearing has an affirmative obligation to develop the record adequately." (internal quotation marks omitted) ). "Whether the ALJ has satisfied this obligation or not must be addressed as a threshold issue." *Moreau*, 2018 WL 1316197, at *4. "Even if the ALJ's decision might otherwise be supported by substantial evidence, the Court cannot reach this conclusion where the decision was based on an incomplete record." *Id.* (quoting *Downes v. Colvin*, No. 14-CV-7147 (JLC), 2015 WL 4481088, at *12 (S.D.N.Y. July 22, 2015)).

"The expert opinions of a treating physician are of particular importance to a disability determination." *Id.* at *5. "What is valuable about the perspective of the treating physician and what distinguishes this evidence from the examining physician and from the ALJ is [the treating physician's] opportunity to develop an informed opinion as to the physical status of the patient."

6

*Halle v. Astrue*, No. 3:11-CV-1181 (VLB), 2012 WL 4371241, at *6 (D. Conn. Sept. 24, 2012) (citing *Peed v. Sullivan*, 778 F. Supp. 1241, 1246 (E.D.N.Y. 1991) ). "In fact, where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel or ... by a paralegal.'" Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir.1996).

This is not a case where plaintiff suffers relatively little mental impairment such that the ALJ may render a common sense judgment about plaintiff's functional capacity. The ALJ acknowledged as much by designating as "severe" plaintiff's schizophrenia/substance induced psychotic disorder and polysubstance abuse disorder, (R. 22), and assessing an RFC with extensive and detailed limitations. During the disability period under review, Plaintiff was admitted three times for psychiatric hospitalizations. (R. 459-518; 420-59; 368-420). On January 31, 2017, a judge of the West Haven Probate Court appointed a conservator, finding by clear and convincing evidence that, among other things,

> The respondent is incapable of caring for himself due to Schizophrenia, which is a permanent diagnosis. The respondent's insight into his need, and, his condition, is worsened in that he is unwilling to accept his diagnosis.
>
> Although the respondent appears capable of managing his medications, he has shown non-compliance with medications, which improve his thinking and are necessary for him to lead a normal day-to-day. He has been in and out of the hospital and requires more assistance than is available to him from his family, to be compliant with his medications in order for him to thrive.

(R. 233).[4] The conservatorship remained in effect during the disability period under review.

---

[4] The Probate Court further found that,

> The respondent lacks the capacity to understand, and, is unable, even with appropriate assistance, to carry out the functions required to meet essential needs. A conservator is needed to assist Mr. Rivera concerning making medical

Here, Plaintiff was under the care of mental health clinicians at Cornell Scott Hill Health Center ("Hill Health"), from July 2014 through October 12, 2017. (R. 579-83; 975-78; *see* Ex. 3F, 5F, 6F). The majority of the treatment at Hill Health was provided in 2017. Plaintiff correctly states that "[d]espite the lengthy and intensive nature of the treatment, the Administrative Record before this Court does not contain *any* medical source statement from APRN Coore, Dr. Bejarano, Dr. Melendez or Dr. Sepulveda-Bentancourt, detailing on a function-by-function basis what Mr. Rivera can or cannot do." [Doc. #13-2 at 1].

The ALJ assigned "less weight" to the assessment of the State agency psychologist at the reconsideration level, by Katrin Carlson, Psy.D. on June 6, 2017. (R. 28, 112, 124). However, Dr. Carlson accurately states that "[t]here is no indication that there is a medical opinion from any medical source." (R. 112, 124). Indeed, there are *no* medical source opinions to support the ALJ's mental RFC. The last progress note from Dr. Sepulveda-Betancourt at Hill Health dated October 12, 2017, is illustrative. At that time, Plaintiff was conserved by the Probate Court. (R. 975). He was receiving daily visiting nurse services to assist with medication compliance. *Id.* The doctor noted, in relevant part, that

> Clt continues with paranoid ideation mostly thinking that other people coughing is due to him and as a message for him to stop doing what he is doing. Th[ese] beliefs are at home and in street impacting clt's judgment, socialization, and communication skills. Clt was able to identify 7 different coughs from stepfather and explained that CO2 emissions from cars and trucks … specifically target him. This writer attempted to redirect and reframed thoughts and used reality testing activities and question[s] with minimal success as clt perseveres and exhibits concrete thinking in session. This writer will discuss with psychiatrist to assess medical necessity of med change.

---

> decisions, communicating with physicians, maintaining medication compliance, and to help overall improve and support his well-being.

(R. 234).

(R. 975). Although the doctor noted that Plaintiff was oriented to person-place-time, with fair memory, impulse control and insight. He also found that Plaintiff's language demonstrated difficulty comprehending, with word finding difficulty and impaired fluency, his thought process was concrete, circumstantial, tangential, disorganized with loose association, and his thought content showed paranoid ideation and ideas of reference. (R. 976). The doctor's treatment assessment for Plaintiff's schizophrenia, with a focus on delusion/persecutory thoughts, stated,

> Clt presents with fixed paranoid and persecutory thoughts. *This impacts clt's socialization and responses to others resulting in relational issues and inability to find and maintain a job.* Clt showed poor insight regarding these thoughts and "convinces" himself there is a reason designed for him. Loose associations and ideas of reference were observed in clt's statements. However, there were periods [where] clt acknowledged how these thoughts are impairing him.

(R. 977 (emphasis added)). The doctor indicated that medication management should continue. *Id.* There are no treatment records from Hill Health after October 2017, although additional records exist and were submitted two days before the hearing, but were precluded by the ALJ.[5] Further, there are no medical sources statements from Plaintiff's mental health providers, APRN Coore, Dr. Bejarano, Dr. Melendez and/or Dr. Sepulveda-Betancourt, who are in a position to provide an opinion on plaintiff's mental health impairments and ability to function in a work setting. The Court finds that this case

---

[5] The ALJ excluded records from Hill Health and New England Home Care (visiting nurse services), that were submitted by Plaintiff's counsel on February 26, 2018. (R. 19-20; 45-47). Plaintiff's counsel argued that his firm had been appointed on January 15, 2018 and that they had made every effort to obtain/submit records before the deadline. (R. 19; 46-47). Indeed, the record shows that counsel submitted records on a rolling basis. (R.45-46). The ALJ ruled that exclusion of the records was appropriate for counsel's failure to follow the uniformity rules that have a submit or notify requirement. (R. 47). The ALJ's hearing was held on February 28, 2018. Plaintiff, or his counsel, must inform SSA about or submit the evidence at least five days prior to the hearing. 20 C.F.R. §416.1435(a). Plaintiff missed the submission deadline by three days.

9

should be remanded for further development of the record from plaintiff's mental health providers and to obtain medical source opinions.

> The proceedings before an ALJ are not supposed to be adversarial. Where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history "even when the claimant is represented by counsel or ... by a paralegal." *Perez v. Chater,* 77 F.3d 41, 47 (2d Cir.1996); *see also Pratts v. Chater,* 94 F.3d 34, 37 (2d Cir. 1996) ("It is the rule in our circuit that 'the ALJ, unlike a judge in a trial, must herself affirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits proceeding.' This duty ... exists even when ... the claimant is represented by counsel." (quoting *Echevarria v. Secretary of Health & Human Servs.,* 685 F.2d 751, 755 (2d Cir. 1982))).

*Richardson v. Barnhart*, 443 F. Supp. 2d 411, 423 (W.D.N.Y. 2006).

> [A]lthough the RFC determination is an issue reserved for the commissioner, see 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c), 416.927(d)(2), 416.946(c), "'an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dailey v. Astrue,* No. 09–CV–0099, 2010 WL 4703599, at *11 (W.D.N.Y. Oct. 26, 2010) (quoting *Deskin v. Comm'r of Soc. Sec.,* 605 F.Supp.2d 908, 912 (N.D. Ohio 2008)). Because there is no medical source opinion supporting the ALJ's finding that House can perform sedentary work, the court concludes that the ALJ's RFC determination is without substantial support in the record and remand for further administrative proceedings is appropriate. *See* 20 C.F.R. §§ 404.1520b(c), 416.920b(c); *see also Suide v. Astrue*, 371 F. App'x 684, 689-90 (7th Cir. 2010) (holding that "the evidentiary deficit left by the ALJ's rejection" of a physician's reports, but not the weight afforded to the reports, required remand).

*House v. Astrue*, No. 5:11-CV-915 GLS, 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013).

Accordingly, the Court finds that additional administrative proceedings are required. On remand, the ALJ should develop the record as necessary to obtain medical records and opinions as to plaintiff's functional limitations from treating and/or examining sources, obtain a consultative physical and/or mental examination and/or a medical expert review, and/or obtain a functional capacity evaluation and thoroughly explain his findings in accordance with the regulations. *See Martin v. Berryhill*, No. 16-CV-6184-FPG, 2017 WL 1313837, at *4 (W.D.N.Y. Apr. 10, 2017) ("There were many avenues available to the ALJ to fill the gap in the record ....")

(citing *Covey v. Colvin*, 204 F. Supp. 3d 497, 507 (W.D.N.Y. 2016)). The Commissioner on remand, "should employ whichever of these methods are appropriate to fully develop the record as to [Rivera's] RFC." *Id.,* 2017 WL 1313837, at *4.

The Court's role in reviewing a disability determination is not to make its own assessment of the plaintiff's functional capabilities; it is to review the ALJ's decision for reversible error. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Therefore, this matter is remanded to the Commissioner for further administrative proceedings consistent with this ruling. On remand, the Commissioner will address the other claims of error not discussed herein. *See Moreau*, 2018 WL 1316197, at *4 ("Because the court finds that the ALJ failed to develop the record, it also suggests that the ALJ revisit the other issues on remand, without finding it necessary to reach whether such arguments would themselves constitute legal error justifying remand on their own.").

### III. CONCLUSION

For the reasons stated, plaintiff's Motion to Reverse the Decision of the Commissioner **[Doc. #13]** is **GRANTED.** Defendant's Motion for an Order Affirming the Commissioner's Decision **[Doc. #15]** is **DENIED**.

In light of the Court's findings above, it need not reach the merits of plaintiff's other arguments. Therefore, this matter is remanded to the Commissioner for further administrative proceedings consistent with this opinion. On remand, the Commissioner shall address the other claims of error not discussed herein.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. *See* 28 U.S.C. §636(c)(3); Fed. R. Civ. P. 73(c). The Clerk is directed to

11

enter judgment in favor of the defendant and close this case.

SO ORDERED, this 2nd day of October 2019, at Bridgeport, Connecticut.

                                   */s/ William I. Garfinkel*
                                   WILLIAM I. GARFINKEL
                                   United States Magistrate Judge